IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-CR-131 (BAH) |
| v. | : | 18 U.S.C. 111(a)(1) |
| JAMES WEEKS, | : | |
| Defendant. | : | |

**FILED**
JUN 27 2024
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, James Weeks, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 p.m., the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, beginning at approximately 2:42 p.m., numerous members of the mob attacked members of the USCP and MPD who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as "the tunnel." Over the course of more than two hours, members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police and stole items from the police defending the tunnel.

9. At approximately 3:02 p.m., defendant James Weeks entered the tunnel, where many members of the mob were fighting against the police. Weeks made his way through the

crowd in the tunnel and toward the police line. After reaching the police line, and as the crowd of rioters continued to violently fight the police, Weeks reached his arm through the broken pane of glass of one of the gold doors inside the tunnel behind which the police line was located as if to grab a nearby MPD officer. As he did so, he yelled out to the MPD officer, "shove it up your ass! You fat fuck! I'm gonna shove that up your ass!" and "we're gonna fuck you up!"

10. Seconds later, Weeks moved around the doors so that he was directly in front of the police and as other rioters in the crowd called out "get that door open!" In response, Weeks pushed the door open, allowing more rioters access to the police line in the tunnel.

11. After opening the door, Weeks struck an MPD officer, MPD Officer J.M., who was located behind those doors using his hands and body. Shortly thereafter, Weeks was sprayed by a chemical irritant deployed by a rioter behind him. With his eyes clenched shut, Weeks then made his way back out of the tunnel.

12. Some time after leaving the tunnel, Weeks went to the Northwest Courtyard on the Upper West Terrace outside the U.S. Capitol Building. He joined a crowd of rioters who were gathering outside a set of windows in that area. As other rioters climbed up on the windowsill, kicked, punched or otherwise struck the panes of glass and/or boards covering the window panes, Weeks cheered them on. Weeks then approached the window himself and waved a black can of OC spray through one of the broken panes of glass and banged it several times against the edges of the window. He then struck the window several times with a wooden stick in conjunction with other rioters, causing the window to break.

### *Elements of the Offense*

13. The parties agree that Assaulting, Resisting, or Impeding Officers, in violation of 18 U.S.C. § 111(a)(1) requires the following elements:

   a. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers from the MPD or USCP.

   b. The defendant did such acts forcibly.

   c. The defendant did such acts voluntarily and intentionally.

   d. The officer assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties and assisting officers of the United States who were then engaged in the performance of their official duties.

   e. The defendant's acts involved physical contact with the victim of that assault or the intent to commit another felony.

### *Defendant's Acknowledgments*

14. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that:

   a. He forcibly assaulted, resisted, opposed, intimidated, impeded, and interfered with members of the MPD and USCP who were engaged in the performance of their official duties.

   b. During such acts, he made physical contact with the victim officers and acted with the intent to commit another felony, namely, a violation of 18 U.S.C. § 231(a)(3) (civil disorder).

                                          Respectfully submitted,

                                          MATTHEW M. GRAVES
                                          United States Attorney
                                          D.C. Bar No. 481052

By: /s/ *Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
IL Bar No. 6316768
Capitol Siege Section
U.S. Attorney's Office
District of Columbia
(202) 252-6778
Kaitlin.klamann@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, James Weeks, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/20/24

JAMES WEEKS
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/26/24

JAMES KNOX
Attorney for Defendant