UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                                           Case No. 1:24-CR-00131 (BAH)




JAMES WEEKS,

_____Defendant._____







**SENTENCING MEMORANDUM ON BEHALF OF JAMES WEEKS**










**HACKER MURPHY, LLP**
James C. Knox, Esq.
*Attorney for Defendant James Weeks*
Admitted *Pro Hac Vice*
28 Second Street
Troy, NY  12181
(518) 274-5820

## INTRODUCTION

James Weeks, aged 55, is a loving father, neighbor, friend, and retiree, having served a full career as a Correction Officer in New York State's prison system.  He stands before the Court for sentencing pursuant to his plea of guilty to Assaulting, Resisting, or Impeding Certain Offenses in violation of 18 U.S.C. § 111(a)(1).  Mr. Weeks has no prior criminal history, has accepted responsibility, and asks that this Court sentence him below the recommended guideline range.

## FORMULATING A FAIR SENTENCE

It is now black letter law that the guidelines are advisory and are simply one consideration among many sentencing factors, and that 18 U.S.C. §3353(a) provides the framework and the criteria which the Sentencing Judge must consider. At the end of the analysis the punishment must be just and fair and must meet the fundamental dictate for federal sentencing that the sentencing process shall result in: "a sentence sufficient, but not greater than necessary," to achieve the goals of a fair, proportionate, balanced and just sentence. Id.

Certain factors set forth in 18 U.S.C. § 3553, along with the purposes and goals of sentencing outlined therein, when applied to Mr. Weeks and the facts of this case, weigh in favor of the conclusion that the goals of sentencing, proportionate punishment, general and specific deterrence, and rehabilitation are fully, fairly and reasonably served by a below-guidelines sentence.

## HISTORY AND CHARACTER OF JAMES WEEKS

James Weeks is a retired corrections officer who, from a young age, dedicated his life to helping others.  When Mr. Weeks was born, his parents were still teenagers and, as their family grew, they relied on Mr. Weeks to care for his three siblings, who were significantly younger and

2

closer in age, while they worked to provide for the family. Mr. Weeks did this willingly and proudly, stepping into whatever role he needed to be of assistance.

This continued throughout his personal and professional life, and Mr. Weeks encouraged his children to develop these qualities. As the PSR reflects, Mr. Weeks has raised two sons, Casey and Trevor Weeks. (PSR ¶ 60). Mr. Weeks ultimately divorced the mother of his children, but that did not deter, or otherwise stop him from being a good father to them. (Id.). As detailed in the character letter submitted by Trevor, his father worked through sleepless days and nights and worked odd shifts as a corrections officer. While this enabled him to build a financial legacy for his children, he did not let his work inhibit his ability to be a good father to them. Trevor credits his father's influence and guidance in that he does not have any debt, holds a stable job, is not plagued by substance issues, and continues to be financially stable since living independently from the age of twenty. He noted that his father taught him at an early age how to fix and maintain things, often machinery and other items deemed to be junk, in part to demonstrate that one need not be wasteful or neglectful of things when a little effort can go a long way. Mr. Weeks' father instilled in him that selflessness, honesty, integrity, sobriety, frugality, perseverance, and diligence are pillars to live by.

As the PSR reflects, Mr. Weeks was a career corrections officer and rose to the position of Lieutenant before retiring in 2016. Mr. Weeks was an overtime leader in the State of New York for not one, but two consecutive years. Attached hereto as Exhibit A are articles written on the subject. In 2013, Mr. Weeks made $104,102 in extra pay, on top of his $90,243 salary. In 2014, he surpassed his own record by making $118,962 in overtime, on top of the same salary. To accomplish such feats, Mr. Weeks had worked approximately 3,000 extra hours, which required

him to put in almost constant doubt shifts and few days off.

Although his overtime came to light publicly on occasion, the truth is that Mr. Weeks always worked a lot at his job.  He served the people of the State of New York honorably and well. Working in corrections is a tough occupation that takes a physical toll, which Mr. Weeks endured throughout his career.  Attached hereto as Exhibit B are employment records demonstrating Mr. Weeks dedication and services as a correction officer – a career in which he rose from Officer to Sergeant and, ultimately, to Lieutenant.  As Mr. Weeks relates in his personal statement, he went from someone who received orders to become someone who oversaw other officers.  He had the duty to assure that officers under his supervision not only followed the rules but stayed safe, and kept safe, those persons in their charge.

The letters submitted in support of Mr. Weeks are a testament to his selflessness, not only to his family and friends, but to strangers too.  Each letter details not only an instance where Mr. Weeks helped them, but when he helped someone else too.

For example, Trevor Weeks noted the time his father traveled over five hours from New York to Maine to help him when his brakes failed one winter because Trevor had no support system in Maine at the time.  He then described how Mr. Weeks voluntarily helped his neighbor, affectionately known as "Old Frank," with lawn care and mechanical troubles.  Mr. Weeks also provided him with company and comfort before Old Frank succumbed to cancer caused by exposure to agent orange during the Vietnam War.

Thomas and Tricia Wood detail how Mr. Weeks is always the first to lend a helping hand, whether it be for home projects or emergency situations.  Specifically, they noted how Mr. Weeks generously assisted with the funeral expenses when Tricia's brother died unexpectedly.  He did so

without question or expectation of repayment – for someone that was not even part of his family or even his friend, but rather the *brother* of his friend.  After attending the funeral services, he left to help another friend who needed aid hundreds of miles away, further demonstrating that helping others, no matter who or how far away they are, is never an inconvenience for Mr. Weeks.

One story that stands out is the generosity Mr. Weeks extended to Katheleen Kappeller, a former prison colleague and friend for over 20 years.  Ms. Kappeller details in her character letter that she was the only registered nurse who worked at Coxsackie Correction Facility on the night shift and was responsible for the care of staff and approximately 1,000 inmates.  Mr. Weeks, working there as a correction officer, would assist her during medical emergencies and once even during a fire, responding in a calm, professional and empathetic manner.

After Ms. Kappeller's husband died, Mr. Weeks took the time to go with Ms. Kappeller to the New York State Retirement Office in Albany, in addition to the Social Security office, to help her resolve issues that jeopardized her retirement plan and social security disbursements.  It takes a special person to not only accompany a friend to these state agencies but wait patiently with them until they are seen by clerk and advocate on their behalf when they are overwhelmed by the process.  That is exactly what Mr. Weeks did for Ms. Kappeller.  In fact, she credits him for saving her retirement pension benefits that she would have lost without his help.  Mr. Weeks did this without asking for or expecting payment, but rather wanted to make sure his friend had someone to lean on and ultimately get the compensation she was entitled to.  He has been, to her, a friend she could count on to be there when she needed a hero.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Weeks has accepted responsibility and the facts surrounding and describing the

nature and circumstances of his offense conduct were set forth in detail in the Statement of
Offense that formed part of the plea agreement in this case.

Some additional context is necessary to a full understanding of the circumstances of the
offense. Mr. Weeks understands and acknowledges that the nature of the criminal conduct that
lies at the heart of his and the many other similarly-situated defendants is extremely serious.
While genuine feelings and honestly-held, sincere beliefs and concerns – many of which remain
honorable in the abstract – brought Mr. Weeks and so many others to Washington, D.C., from
across the country on January 6, 2021, those feelings and beliefs did not justify, and do not now
excuse, conduct that went beyond peaceful assembly and protest. Mr. Weeks is now painfully
aware that, from the moment he joined the throng that marched to the Capitol, he began traveling
down a path that, now upon reflection, was clearly his road to criminal conduct, and to a
sentencing before this Court.

Mr. Weeks spent his entire career as a law enforcement officer – working in a New York
state prison as a correction officer, rising through the ranks to a supervisory position, with duties
and responsibilities to fellow officers and the inmates they supervised. As a former supervisor
whose responsibilities included investigating altercations between inmates and officers, it is
perhaps understandable that Mr. Weeks focus in this case was, at the outset, a narrow one
focused on the precise moment he struck a police officer.  Through this process, he has come to
realize that all of the wrong steps he took on January 6 that led up to that moment, and to his
other criminal conduct that fateful day, are what needs to be analyzed, understood, and never
allowed by him to be repeated.

Mr. Weeks does not stand before this Court arguing that his actions ought to be excused

because he "just got caught up" or was "carried along" by the actions or words of others.  While such facts played a role in his decisions, he is, as is further described below, a man of character and integrity who accepts personal responsibility for his actions on that day.  As his own statement, submitted herewith, makes clear, Mr. Weeks traveled to Washington, D.C. on January 6, 2021, prompted by a genuinely held concern that there had been election interference.  Although in hindsight the sources of that information were not reliable, at the time Mr. Weeks (and many others) credited them.

His initial instinct to travel to a peaceful rally at the Ellipse was not necessarily wrong.  The actions he took after marching to the Capitol, however, were.  In acknowledgment of that, Mr. Weeks entered into an agreement to, and did, plead guilty in this case.  But as he explains in his own statement, once he reached the Capitol and word spread that a protestor had been shot by police, the emotions of January 6, 2021, combined with his lifetime of experiences and training as a correction officer to prompt him to act further.  He was a trained first responder, and he responded in accordance with his training by going toward conflict, rather than away from it – as would have been the far better choice.  Mr. Weeks allowed himself to be carried along by his emotions and his ingrained training, and foolishly allowed himself to be spurred onto the criminal conduct he committed, including the acts to which he pleaded guilty.

Mr. Weeks recognizes that, beyond those specific acts, it is his conduct as a whole on that day that is relevant and which the Court will consider.  Mr. Weeks has pleaded guilty to serious crimes in open court and has become a convicted felon: it follows that no amount of rehashing of the specifics of his conduct on that day will render it good.  If that were the case, he would not have pleaded guilty.  Thus, Mr. Weeks acknowledges in his statement to the Court that he did

many things that were wrong, not just the acts he pleaded guilty to.

All that being said, there are certain facts about the criminal conduct at issue that require some explanation. While Mr. Weeks did strike an officer, the strike was neither a kick nor a punch, but more in the realm of pushing and shoving in the midst of a scrum. Mr. Weeks cannot, and does not, attempt to excuse his conduct by explaining all of this, but the actual nature of the criminal physical contact he made with police demonstrates that, while wholly wrong, Mr. Weeks had no intent to injure the officer and, in fact, did not cause any injury. Of course, while the victim was uninjured by Mr. Weeks, this does not make his conduct not an assault. Mr. Weeks also acknowledges that his actions, both specifically in striking an officer and as a whole in the tunnel, also impeded and interfered with both the officer whom he struck and the other officers present that day, all of whom were merely protecting the Capitol.

As to his conduct in breaking a window shutter, Mr. Weeks regrets his involvement in an act of vandalism of our nation's Capitol. Perhaps no greater statement can be made on his behalf in that respect other than that, well prior to sentencing, Mr. Weeks has paid restitution in full.

Finally, unlike many other Capitol Riot defendants, Mr. Weeks case involved no braggadocio published or disseminated in any way, whether online, by text message, though video, audio or any other means of communication, either before or after the riot. Mr. Weeks did not have any criminal intent in mind before January 6, 2021, that can be shown to have been communicated or broadcast to anyone, in any way, ahead of time; nor did Mr. Weeks celebrate his actions that day or boast about them, online, in private, or by any other means. As his personal statement reflects, his overwhelming emotion on January 7, 2021, was regret in having placed himself outside the law for no valid reason.

## NEED FOR THE SENTENCE TO BE IMPOSED

The Court is of course well aware of the purposes of sentencing, including that the sentence should provide just punishment, afford adequate deterrence to both the public generally and to the defendant specifically, and to provide the defendant with any need of care or treatment. *See* 18 U.S.C. § 3553(a)(2).

Here, defendant is retired following a long career of service, has no criminal record, is a father, grandfather and friend, and does not drink or do drugs. He volunteers at a local museum. He likes to work on cars and to help his neighbors. Outside of the events of January 6, 2021, and since his retirement, Mr. Weeks has lived a simple life free from all controversy and misconduct. Any sentence in this case, as concerns this factor, is not likely to serve to rehabilitate or reeducate Mr. Weeks, who's conduct in the intervening 3¾ years since the incident can only serve to demonstrate that he does not require rehabilitation.

Nor is specific deterrence needed for Mr. Weeks. Mr. Weeks has never before this case been arrested, and while he has certainly been in a prison, it has never been as an inmate. The process of realization and acceptance that he has gone through in the course of this case, from arrest and processing, through a plea of guilty and on to sentencing, has been a long and hard one for Mr. Weeks. It is hard to overstate the profound impact that this process has had on him personally and psychologically. While he stands ready to accept the Court's sentence, it must be said that having experienced the criminal justice system once, Mr. Weeks will never place himself in such a position again. The chance that Mr. Weeks will recidivate is nil.

Instead, the Court's consideration here must necessarily fall mainly to punishing Mr. Weeks for his conduct, and to deterring others from committing similar offenses in future. Mr.

Weeks knows and accepts that this Court will punish him, and the Court knows best the value any particular sentence imposed upon Mr. Weeks will have in deterring others in future from similar offense.  However, on balance, the concerns of this factor militate in favor of a lesser, rather than a greater, sentence, given the absence of any need for rehabilitation and the non-existent likelihood that Mr. Weeks will reoffend.

### REQUEST FOR A VARIANCE

Based upon his character and history, a downward variance from the applicable Guideline range is appropriate, because the Guidelines do not take into account the unusual factors present in Mr. Weeks's case.   Before this Court stands a man who has lived a life of strict adherence to duty and rules.  James Weeks worked his entire adult life not just following, but also enforcing, rules designed to secure the safety of those he imprisoned and the safety of those he was working with.  Adhering to both a personal and professional code at all times without exception is something which Mr. Weeks literally embodies.

This adherence has brought him successfully to retirement and financial security – a security which he earned through a career of physical and mental toil and risk.  He has used his resources and time to not just raise his children, but to assist and protect family and friends.

For Mr. Weeks, January 6, 2021 represented just as much of an aberration – a step outside of the ordinary and expected events of his life – as it did for the rest of the country.  Mr. Weeks will never repeat his conduct, and there can be no better assurance of that than the law-abiding, rule-following, careful life he has lived up to and since that day.

Unlike many who have stood convicted of offenses arising out of that day, Mr. Weeks never posted concerning or inflammatory statements before or after the events of January 6,

10

2021.  Nor did he brag or boast about his participation in the events of that day, on any site, or anywhere.  Mr. Weeks got to the Capitol on that day spurred by an honestly-held belief that democracy needed his presence.  While there, he allowed the emotions of that day to combine with his instincts, his professional training and lived experience in dealing with calamitous and violent situations in prison to push him to commit criminal offenses.

Every day since then – from January 7, 2021 to the present – Mr. Weeks has resumed the careful, law-abiding, rule-following life that he led until and since that day.  Mr. Weeks holds himself to an incredibly high standard of conduct, and regrets more than anyone the deviation from that standard that occurred on that single day.  As a former Correction Officer now doomed through his own folly to become an inmate himself, he is suffering a great fall that is hard to internally reconcile.

A downward variance here is appropriate because, for Mr. Weeks, no prison time is necessary to ensure that he continues down a lawful path.  Mr. Weeks accepts that a sentence will be imposed for other reasons – to punish him, to deter others, to reflect the seriousness of the offense, and to avoid sentencing disparity.  For Mr. Weeks, however, the most disparate thing is the fact that a man like the one he believes and has shown himself to be got involved in these events and ended up facing a federal prison sentence.  While there are others who made similar mistakes, very few January 6 offenders have come before this Court with such a history of service without blemish, and free from brash online baggage.  Mr. Weeks may honestly tell the Court that, for him, January 6, 2021 represents an out-of-character mistake that will not be repeated.

**REQUEST FOR SELF-SURRENDER AND DESIGNATION TO FCI DANBURY**

Mr. Weeks respectfully requests that he be permitted to self-surrender to prison.  As is noted by the Probation Office, he has appeared for all scheduled Court appearances, and is neither a flight risk nor a danger to the community.  *See* Dkt. No. 42.

Additionally, in order to be more easily visited by family and friends while incarcerated, Mr. Weeks respectfully requests the Court recommend to the Bureau of Prisons that he be designated to FCI Danbury.

**CONCLUSION**

In light of all of the above, it is respectfully submitted that a minimal term of imprisonment of time followed by a term of supervised release to follow will be more than adequate to address the purposes of sentencing to punish and rehabilitate the defendant and to deter others from similar conduct.

DATED:  September 18, 2024

Respectfully submitted,

HACKER MURPHY, LLP

/s/ James C. Knox
JAMES C. KNOX, ESQ.
*Attorney for Defendant James Weeks*
Admitted *Pro Hac Vice*
28 Second Street
Troy, New York 12181
(518) 247-5820

12